UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

URBANA DIVISION

| | | |
|---|---|---|
| HOMESTAR BANK, an Illinois Banking Corporation, | ) ) ) | CIVIL ACTION NO. _____ |
| Plaintiff | ) ) ) | |
| v. | ) ) ) | **NOTICE OF REMOVAL** |
| ROBERT C. COLVIN and JAN L. COLVIN, | ) ) ) ) | |
| Defendants | ) ) | |

　　　　Robert C. Colvin and Jan L. Colvin, the defendants in the above titled action, respectfully state as follows:

1. On January 17th, 2006 a civil action was commenced against the defendants in the Circuit Court of the Twenty-First Judicial Circuit of the State of Illinois, Kankakee County entitled Homestar Bank v. Robert C. Colvin and Jan L. Colvin, Case No. 06-L-9.

2. The defendants received service of copies of the summons and complaint in this action on Sunday, February 12th, 2006. Copies of the summons and complaint are attached hereto, and constitute the only process, pleadings, and orders that have been filed to date in this action.

3. This action is a civil action for damages between the petitioners, citizens of Colorado, and the plaintiff, a resident of Illinois. At the time the action was commenced, the defendant, Robert C. Colvin, was, and now is, a citizen of Colorado. At the time the action was commenced, the defendant, Jan L. Colvin, was, and now is, a citizen of Colorado. At the time the action was commenced, the plaintiff was, and now is, a resident of Illinois.

4. This action arises out of an alleged loan from the plaintiff to the defendants in the amount of Five Hundred Seventy Seven Thousand and Five Hundred ($577,500.00) dollars. The complaint alleges that the defendants have failed and refused to make the required payments to plaintiff and are currently in arrears on said loan in the amount of One Hundred Thirty Thousand Nine Hundred Ninety-Nine and 60/100 dollars ($130,999.60). The amount in controversy in this action exceeds seventy five thousand dollars, exclusive of interest and costs.

5.  This Court has original jurisdiction of this action on the basis of diversity of citizenship, under 28 U.S.C. § 1332, and removal jurisdiction under 28 U.S.C. § 1441 (a).

6.  The petitioners will give written notice of the filing of this notice to the plaintiff, as required by 28 U.S.C. § 1446 (d).

7.  A copy of this notice will be filed with the Clerk of the Circuit Court of the Twenty-First Judicial Circuit of the State of Illinois, Kankakee County, as required by 28 U.S.C. § 1446 (d).

    WHEREFORE, the defendants request that this action proceed in this Court as an action properly removed hereto.  Respectfully submitted this 13th day of March, 2006.

_____
William G. Winter, Esq., Colorado Bar #36159
*Attorney for Plaintiff*
475 Kendall Court #127
Castle Rock, Co  80108
T) 303-660-4190
F) 303-688-1105

E-FILED
Monday, 13 March, 2006  04:58:04 PM
Clerk, U.S. District Court, ILCD

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE TWENTY-FIRST JUDICIAL CIRCUIT
KANKAKEE COUNTY

| | |
|---|---|
| HOMESTAR BANK, an Illinois Banking Corporation, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06-L-9 |
| ) | |
| ROBERT C. COLVIN and JAN L. COLVIN, ) | |
| Defendants. ) | |

Served 2/12/06

# SUMMONS

To each Defendant:   Jan L. Colvin
2710 Rockbridge Way
Highlands Ranch CO 80129

You are summoned and required to file and answer in this case, or otherwise file your appearance in the Office of the Circuit Clerk of this Court, Kankakee County Courthouse, 450 E. Court Street, Kankakee, IL 60901 within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

**To the officer:**

This summons must be returned by the officer or other person to whom it was given for service, with indorsement of service and fees, if any, immediately after service. If service cannot be made, summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

(Seal of Court)

Witness 01-17, 2006

Kathryn Thomas
Clerk of Circuit Court

By: _____
Deputy

I have duly served the within by reading the same to the within named _____.

The within named _____ was not found in my County.

Fees:  Service, $_____          _____, Sheriff
Mileage, $_____
Return, $_____
TOTAL $_____         By, _____, Deputy

Name:   HOMESTAR BANK, William F. Smith, General Counsel
3 Diversatech Drive, Manteno IL 60950  (815) 468-6504

Init Case Mgmt Conf
JUN 1 4 2006
9:00 AM IN ROOM 204

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE TWENTY-FIRST JUDICIAL CIRCUIT
KANKAKEE COUNTY

| | | |
|---|---|---|
| HOMESTAR BANK, an Illinois Banking Corporation, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 06-L-9 |
| | ) | |
| ROBERT C. COLVIN and JAN L. COLVIN, | ) | |
| Defendants. | ) | |

## COMPLAINT
### Count I

NOW COMES the Plaintiff, HOMESTAR BANK, an Illinois Banking Corporation, by and through its General Counsel, William F. Smith, and complains of the Defendants, ROBERT C. COLVIN and JAN L. COLVIN, as follows:

1. Plaintiff is an Illinois Corporation with its office located at 3 Diversatech Drive, Manteno IL 60950.

2. Defendants, ROBERT C. COLVIN and JAN L. COLVIN, at all times relevant hereto are residents of 2710 Rockbridge Way, Highlands Ranch, CO 80129.

3. That on the 1st day of May, 2000, Plaintiff advanced a total sum of FIVE HUNDRED TWENTY-FIVE THOUSAND and 00/100 ($525,000.00) Dollars in the form of a lump sum payment of FIVE HUNDRED SEVENTY-SEVEN THOUSAND FIVE HUNDRED and 00/100 ($577,500.00) Dollars. (A copy of which is attached hereto as Exhibit "A"). Further, said loan matured on May 1, 2001.

4. Defendant has failed to and refuses to make the required payment to Plaintiff and is currently in arrears on said loan in the amount of ONE

HUNDRED THIRTY THOUSAND NINE HUNDRED NINETY-NINE and 60/100 ($130,999.60) Dollars.

**WHEREFORE,** the Plaintiff, HOMESTAR BANK, an Illinois Banking Corporation, respectfully requests this Court enter Judgment in its favor and against Defendants, ROBERT C. COLVIN and JAN L. COLVIN, in an amount of $130,999.60 plus costs, reasonable attorney fees and for such other relief as this Court deems just.

### Count II

**NOW COMES** the Plaintiff, HOMESTAR BANK, an Illinois Banking Corporation, by and through its General Counsel, William F. Smith, and complains of the Defendant, ROBERT C. COLVIN, as follows:

1. Plaintiff is an Illinois Corporation with its office located at 3 Diversatech Drive, Manteno IL 60950.

2. Defendant, ROBERT C. COLVIN, at all times relevant hereto was a resident of 2710 Rockbridge Way, Highlands Ranch, CO 80129.

3. That on the 23rd day of November, 1999, Plaintiff advanced a total sum of THIRTY-NINE THOUSAND ONE HUNDRED and 00/100 ($39,100.00) Dollars in the form of an installment loan with monthly payments in the amount of FIVE HUNDRED FIFTY-FIVE and 13/100 ($555.13) Dollars. (A copy of which is attached hereto as Exhibit "B").

4. Defendant has failed to and refuses to make the required payment to Plaintiff and is currently in arrears on said loan in the amount of TWO THOUSAND SEVEN HUNDRED SEVENTY and 27/100 ($2,770.27) Dollars.

**WHEREFORE,** the Plaintiff, HOMESTAR BANK, an Illinois Banking Corporation, respectfully requests this Court enter Judgment in its favor and against Defendant, ROBERT C. COLVIN, in an amount of $2,770.27 plus costs, reasonable attorney fees and for such other relief as this Court deems just.

<u>**Count III**</u>

**NOW COMES** the Plaintiff, HOMESTAR BANK, an Illinois Banking Corporation, by and through its General Counsel, William F. Smith, and complains of the Defendants, ROBERT C. COLVIN as follows:

1. Plaintiff is an Illinois Corporation with its office located at 3 Diversatech Drive, Manteno IL 60950.

2. Defendant, ROBERT C. COLVIN, at all times relevant hereto is a resident of 2710 Rockbridge Way, Highlands Ranch CO 80129.

3. That on the 8th day of June, 1999, Plaintiff advanced a total sum of FIFTY-FOUR THOUSAND FIFTY-TWO and 94/100 ($54,052.94) Dollars in the form of an installment loan with monthly payments in the amount of SEVEN HUNDRED SIXTY and 06/100 ($760.06) Dollars. (A copy of which is attached hereto as Exhibit "C").

4. Defendant has failed to and refuses to make the required payment to Plaintiff and is currently in arrears on said loan in the amount of THREE THOUSAND EIGHT HUNDRED SIXTY-TWO and 24/100 ($3,862.24) Dollars.

**WHEREFORE,** the Plaintiff, HOMESTAR BANK, an Illinois Banking Corporation, respectfully requests this Court enter Judgment in its favor and against Defendant, ROBERT C. COLVIN, in an amount of $3,862.24 plus costs, reasonable attorney fees and for such other relief as this Court deems just.

> HOMESTAR BANK, an Illinois Banking Corporation,
>
> By: _____
> William F. Smith

THIS INSTRUMENT PREPARED BY:
William F. Smith
General Counsel – HomeStar Bank
3 Diversatech Drive
Manteno IL 60950
(815) 468-6504
Atty. Reg. No. 06207700

## NOTE MODIFICATION AGREEMENT - Note #56478850

THIS AGREEMENT entered into this 2nd day of July, 2003 to be effective as of June 8, 2003, by and between **Robert C. Colvin**, hereinafter referred to as Borrower, and **HOMESTAR BANK**, hereinafter referred to as Lender;

**WITNESSETH:**

WHEREAS, on June 8, 1999, the Borrower executed a certain promissory note in the principal sum of **Fifty Four Thousand Fifty Two and 94/100**($54,052.94)** and secured said note by a title to one 2000 Jaguar 6100.

AND, WHEREAS, the Borrower and Lender desire to modify the terms and conditions contained in said note.

NOW, THEREFORE, in mutual consideration of the covenants contained herein, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1. That the terms of the note referred to are hereby modified in the following manner:

   A. The principal and interest payments shall continue at $600.00 monthly beginning on August 8, 2003 until the new maturity date of December 8, 2003 when the entire principal and interest balance shall be due and payable in full, approximately $37,472.42.

2. This agreement is supplementary to said note. All the provisions thereof and of the principal note, including the right to declare principal and accrued interest due for any cause specified in said note, shall remain in full force and effect except as herein expressly modified. The provisions of this Agreement shall inure to the benefit of any holder of said principal note or notes and interest notes and shall bind the heirs, personal representatives and assigns of HomeStar Bank.

In Witness Whereof, the parties hereto have signed, sealed and delivered this Agreement the day and year first above written.

BY: _____/s/ Robert C._____
       Robert C. Colvin

HomeStar Bank

BY: _____/s/ Linda Ohlt_____

| HomeStar Bank
303 Section Line Road
P.O. Box 697
Manteno, IL 60950 | Robert C. Colvin
Jan L. Colvin
1777 Larimer Street - Unit 1702
Denver, CO 80202 | Loan Number 59602750
Date May 1, 2000
Maturity Date May 1, 2001
Loan Amount $ 525,000.00
Renewal Of |
|---|---|---|
| LENDER'S NAME AND ADDRESS
"You" means the Lender, its successors and assigns. | BORROWER'S NAME AND ADDRESS
"I" includes each Borrower above, jointly and severally. | |

TERMS FOLLOWING A ☐ APPLY ONLY IF CHECKED

NOTE - For value received, I promise to pay to you, or your order, at your address above, the principal sum of: **Five Hundred Twenty-Five Thousand and no/100****************************************************** Dollars $ *525,000.00**

plus interest from **May 1, 2000** at the rate of **10.00** % per year until **May 1, 2001**.

☒ ADDITIONAL FINANCE CHARGE - I also agree to pay a nonrefundable service charge of $ **1,000.00**, and it will be ☐ paid in cash. ☐ paid pro rata over the loan term.
☒ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)

☐ VARIABLE RATE - The rate above may then change so as always to be _____ the following index rate: _____

_____ . The interest rate may not change more than _____ % each _____.
The annual interest rate in effect on this note will not at any time be more than _____ % or less than _____ %. The interest rate in effect on this note may change (as often as) _____ (assuming there is a change in the base rate) and an increase in the interest rate will cause an increase in ☐ the amount of each scheduled payment. ☐ the amount due at maturity. ☐ the number of payments.

PAYMENT - I will pay this note as follows:
(a) ☒ Interest due: **At maturity on May 1, 2001 or upon demand**
    Principal due: **At maturity on May 1, 2001 or upon demand**
(b) ☐ This note has _____ payments. The first payment will be in the amount of $ _____ and will be due _____. A payment of $ _____ will be due on the _____ day of each _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____.

INTEREST - Interest accrues on a **365 day** basis.

☐ MINIMUM INTEREST CHARGE - I agree to pay a minimum interest charge of $ _____ if I pay this loan off before you have earned that much in interest.

☐ LATE CHARGE - I agree to pay a late charge on any payment made more than _____ days after it is due equal to _____ % of the payment, or $ _____, whichever is greater.

POST-MATURITY INTEREST - Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☒ Interest will accrue at the rate of **15.00** % per year on the balance of this note not paid at maturity, including maturity by acceleration.

THE PURPOSE OF THIS LOAN IS - **Purchase Home for Daughter**

SECURITY - You have certain rights that may affect my property as explained on page 2. This loan ☒ is ☐ is not further secured.
(a) ☒ This loan is secured by **Deed of Trust**
(b) ☐ Security Agreement - I give you a security interest in the Property described below. The rights I am giving you in this Property and the obligations this agreement secures are defined on page 2 of this agreement. _____ dated **May 1, 2000**

This Property will be used for **Personal** purposes.

| ANNUAL PERCENTAGE RATE
The cost of my credit as a yearly rate. | FINANCE CHARGE
The dollar amount the credit will cost me. | AMOUNT FINANCED
The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS
The amount I will have paid when I have made all scheduled payments. | I have the right to receive at this time an itemization of the Amount Financed. |
|---|---|---|---|---|
| 10.21 % | $ 53,522.00 | $ 523,978.00 | $ 577,500.00 | X YES - I want an itemization.
☐ NO - I do not want an itemization. |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 577,500.00 | At maturity on May 1, 2001 or upon demand |
| | $ | |
| | $ | |
| | $ | |

"e" means an estimate.
$ _____ Filing Fees
$ _____ Nonfiling Insurance

☒ This note has a demand feature. ☒ This note is payable on demand and all disclosures are based on an assumed maturity of one year.
☐ Variable Rate ☐ My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
(Check one) ☐ The annual percentage rate may increase during the term of this transaction if _____

Any increase will take the form of _____
If the rate increases by _____ % in _____, will increase to _____. The rate may not increase more often than once _____, and may not increase more than _____ % each. The rate will not go above _____ %.

Security - I am giving a security interest in: ☐ (brief description of other property) _____
☒ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ my deposit accounts and other rights to the payment of money from you.
☐ Late Charge - I will be charged a late charge on any payment made more than _____ when it is due equal to _____ % of the payment, or $ _____, whichever is greater.

☐ Required Deposit - The annual percentage rate does not take into account my required deposit.
Prepayment - If I pay off this note early, I ☐ may ☒ will not have to pay a penalty.
                                          ☐ may ☐ will not be entitled to a refund of part of the finance charge.

☒ Assumption - Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.

I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

CREDIT INSURANCE - Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless I sign and agree to pay the additional premiums.

| Type | Premium | Term |
|---|---|---|
| Credit Life | | |
| Credit Disability | | |
| Joint Credit Life | | |

I ☐ do ☒ do not want credit life insurance.
I ☐ do ☒ do not want credit disability insurance.
I ☐ do ☒ do not want joint credit life insurance.
I ☐ do ☒ do not want _____ insurance.
X _____ DOB _____
X _____ DOB _____

PROPERTY INSURANCE - I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ _____ for _____ of coverage.

SINGLE INTEREST INSURANCE - I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ _____ for _____ of coverage.

ITEMIZATION OF AMOUNT FINANCED
AMOUNT GIVEN TO ME DIRECTLY $ _____
AMOUNT PAID ON MY (LOAN) ACCOUNT $ _____
AMOUNTS PAID TO OTHERS ON MY BEHALF:
    Insurance Premiums $ _____
    to Public Officials $ _____
See HUD Settlement
    Statement $ 525,000.00
(less) PREPAID FINANCE CHARGE(S) $ 1,022.00
Amount Financed $ 523,978.00

(You are retaining a portion of the items marked above with an asterisk) (Add all items financed and subtract prepaid finance charges.)

SIGNATURES - I AGREE TO THE TERMS SET OUT ON PAGE 1 AND PAGE 2 OF THIS AGREEMENT. I HAVE RECEIVED A COPY OF THIS DOCUMENT ON TODAY'S DATE.
COSIGNERS - SEE NOTICE ON PAGE 2 BEFORE SIGNING.

Signature _____ ROBERT C. COLVIN
Signature _____ JAN L. COLVIN

(Optional)
Signed _____ For Lender
Title _____

VARIABLE/SIMPLE INTEREST NOTE, DISCLOSURE, AND SECURITY AGREEMENT
© 1981, 1988 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form NDaS-VSI-IL 10/30/98 CUSTOMIZED

CONSUMER LOAN - NOT FOR OPEN-END CREDIT
(page 1 of 2)

EXHIBIT A

*Sent to Kim Okla, Atty. in Colorado 9/5/00*

## ADDITIONAL TERMS OF THE NOTE

**DEFINITIONS** - "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - This note and any agreement securing this note will be governed by the laws of the state of Illinois. The federal Truth-in-Lending disclosures on page 1 are disclosures only and are not intended to be terms of this agreement. The fact that any part of this note cannot be enforced will not affect the rest of this note. Any change to this note or any agreement securing this note must be in writing and signed by you and me.

**PAYMENTS** - Each payment I make on this loan will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on the interest rates (if variable) and my payment record. If any payment due under this loan does not equal or exceed the amount of interest due, you may, at your option, increase the amount of the payment due and all future payments to an amount that will pay off this loan in equal payments over the remaining term of this loan.

I understand and agree that some payments to third parties as a part of this contract may involve money retained by you or paid back to you as commissions or other remuneration.

**PREPAYMENT** - I may prepay this loan in whole or in part at any time. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full.

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If "Variable Rate" is checked on page 1, I will pay interest at the rates in effect from time to time. Decreases in the interest rate for this note will have the opposite effect on payments that increases would have. You will figure a change in the interest rate by using the index rate in effect at the time the interest rate is to change. Changes in the index between scheduled changes in the interest rate will not affect the interest rate. If the index specified on page 1 ceases to exist, I agree that you may substitute a similar index for the original.

**INDEX** - If you and I have agreed that the interest rate on this note will be variable and will be related to an index, then the index you select will function only as a tool for setting the rate on this note. You do not guaranty, by selecting any index, that the interest rate on this note will have a particular relationship to the interest rate you charge on any other loans or any type or class of loans with your other customers.

**ACCRUAL METHOD** - The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1. For interest calculation, the accrual method will determine the number of days in a year. If no accrual method is stated, then you may use any accrual method for calculating interest allowed by law.

**POST-MATURITY INTEREST** - Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified on page 1. For purposes of this section, final maturity occurs:

(a) If this loan is payable on demand, on the date you make demand for payment;
(b) If this loan is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier;
(c) On the date of the last scheduled payment of principal; or
(d) On the date you accelerate the due date of this loan (demand immediate payment).

**REAL ESTATE OR RESIDENCE SECURITY** - If this loan is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this agreement.

**DEFAULT** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, I will be in default on this loan and any agreement securing this loan if any one or more of the following occurs:

(a) I fail to make a payment in full when due;
(b) I die, am declared incompetent, or become insolvent;
(c) I fail to keep any promise I have made in connection with this loan;
(d) I fail to pay, or keep any other promise on, any other loan or agreement I have with you;
(e) I make any written statement or provide any financial information that is untrue or inaccurate at the time it is provided;
(f) Any creditor of mine attempts to collect any debt I owe through court proceedings, set-off or self-help repossession;
(g) The Property is damaged, destroyed or stolen;
(h) I fail to provide any additional security that you may require;
(i) Any legal entity (such as a partnership or corporation) that has agreed to pay this note merges, dissolves, reorganizes, ends its business or existence, or a partner or majority stockholder dies or is declared incompetent; or
(j) Anything else happens that causes you to believe that you will have difficulty collecting the amount I owe you.

If any of us are in default on this note or any security agreement, you may exercise your remedies against any or all of us.

**REMEDIES** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, if I am in default on this loan or any agreement securing this loan, you may:

(a) Make unpaid principal, earned interest and all other agreed charges I owe you under this loan immediately due;
(b) Use the right of set-off as explained below;
(c) Demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy;
(d) Make a claim for any and all insurance benefits or refunds that may be available on my default;
(e) Use any remedy you have under state or federal law;
(f) Use any remedy given to you in any agreement securing this loan.

By choosing any one or more of these remedies you do not give up your right to use another remedy later. By deciding not to use any remedy should I be in default, you do not give up your right to consider the event a default if it happens again.

**COSTS OF COLLECTION AND ATTORNEYS' FEES** - I agree to pay you all reasonable costs you incur to collect this debt or realize on any security. This includes, unless prohibited by law, reasonable attorneys' fees. This provision also shall apply if I file a petition or any other claim for relief under any bankruptcy rule or law of the United States, or if such petition or other claim for relief is filed against me by another.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:

(a) Any deposit account balance I have with you;
(b) Any money owed to me on an item presented to you or in your possession for collection or exchange; and
(c) Any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**OTHER SECURITY** - Any present or future agreement securing any other debt I owe you also will secure the payment of this loan. Property securing another debt will not secure this loan if such property is my principal dwelling and you fail to provide any required notice of right of rescission. Also, property securing another debt will not secure this loan to the extent such property is in household goods.

**OBLIGATIONS INDEPENDENT** - I understand that my obligation to pay this loan is independent of the obligation of any other person who has also agreed to pay it. You may, without notice, release me or any of us, give up any right you have against any of us, extend new credit to any of us, or renew or change this note one or more times and for any term, and I will still be obligated to pay this loan. You may, without notice, fail to perfect your security interest in, impair, or release any security and I will still be obligated to pay this loan.

**WAIVER** - I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

**PRIVACY** - I agree that from time to time you may receive credit information about me from others, including other lenders and credit reporting agencies. I agree that you may furnish on a regular basis credit and experience information regarding my loan to others seeking such information. To the extent permitted by law, I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**FINANCIAL STATEMENTS** - I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**PURCHASE MONEY LOAN** - If this is a purchase money loan, you may include the name of the seller on the check or draft for this loan.

## ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**SECURED OBLIGATIONS** - This security agreement secures this loan (including all extensions, renewals, refinancings and modifications) and any other debt I have with you now or later. Property described in this agreement will not secure other such debts if you fail to give any required notice of the right of rescission with respect to the Property. Also, this security agreement will not secure other debts if this security interest is in household goods and the other debt is a consumer loan. This security agreement will last until it is discharged in writing.

For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement:

(a) Payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the purchase money loan; and
(b) Payments on the purchase money loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items were acquired.

No security interest will be terminated by application of this formula. "Purchase money loan" means any loan where the proceeds of which, in whole or in part, are used to acquire any property securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**PROPERTY** - The word "Property," as used here, includes all property that is listed in the security agreement on page 1. If a general description is used, the word Property includes all my property fitting the general description. Property also means all benefits that arise from the described Property (including all proceeds, insurance benefits, payments from others, interest, dividends, stock splits and voting rights). It also means property that now or later is attached to, is a part of, or results from the Property.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - Unless a co-owner(s) of the Property signed a third party agreement, I represent that I own all the Property. I will defend the Property against any other claim. I agree to do whatever you require to perfect your interest and keep your priority. I will not do anything to harm your position.

I will keep the Property in my possession (except if pledged and delivered to you). I will keep it in good repair and use it only for its intended purposes. I will keep it at my address unless we agree otherwise in writing.

I will not try to sell or transfer the Property, or permit the Property to become attached to any real estate, without your written consent. I will pay all taxes and charges on the Property as they become due. I will inform you of any loss or damage to the Property. You have the right of reasonable access in order to inspect the Property.

**INSURANCE** - I agree to buy insurance on the Property against the risks and for the amounts you require. I will name you as loss payee on any such policy. You may require added security on this loan if you agree that insurance proceeds may be used to repair or replace the Property. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will buy the insurance from a firm authorized to do business in Illinois. The firm will be reasonably acceptable to you. I will keep the insurance until all debts secured by this agreement are paid.

**COLLATERAL PROTECTION INSURANCE NOTICE:** Unless I provide you with evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral. This insurance may, but need not, protect my interests. The coverage that you purchase may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by you, but only after providing you with evidence that I have obtained insurance as required by our agreement. If you purchase insurance for the collateral, I will be responsible for the premiums for that insurance, including interest and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The premiums may be added to my total outstanding balance or obligation. The premiums may be more than the premiums for insurance I may be able to obtain on my own.

**DEFAULT AND REMEDIES** - If I am in default, in addition to the remedies listed in the note portion of this document and subject to any of the limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph, you may (after giving notice and waiting a period of time, if required by law):

(a) Pay taxes or other charges, or purchase any required insurance, if I fail to do these things (but you are not required to do so). You may add the amount you pay to this loan and accrue interest on that amount at the interest rate(s) in effect from time to time, on this note until paid in full;
(b) Require me to gather the Property and any related records and make it available to you in a reasonable fashion;
(c) Take immediate possession of the Property, but in doing so you may not breach the peace or unlawfully enter onto my premises. You may sell, lease or dispose of the Property as provided by law. (If the Property includes a manufactured home, you will begin the repossession by giving me notice and an opportunity to cure my default, if required by law.) You may apply what you receive from the sale of the Property to your expenses and then to the debt. If what you receive from the sale of the Property is less than what I owe you, you may take me to court to recover the difference (to the extent permitted by law); and
(d) Keep the Property to satisfy the debt.

I agree that when you must give notice to me of your intended sale or disposition of the Property, the notice is reasonable if it is sent to me at my last known address by first class mail 10 days before the intended sale or disposition. I agree to inform you in writing of any change in my address.

**FILING** - A copy of this security agreement may be used as a financing statement when allowed by law.

---

### THIRD PARTY AGREEMENT

For the purposes of the provisions within this enclosure, "I," "me" or "my" means the person signing below and "you" means the Lender identified on page 1.

I agree to give you a security interest in the Property that is described on page 1. I agree to the terms of this note and security agreement but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any borrower, renew or change this note or security agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any borrower.

I HAVE RECEIVED A COMPLETED COPY OF THIS NOTE AND SECURITY AGREEMENT.

NAME _____

X

---

### NOTICE TO COSIGNER

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

---

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable

| HomeStar Bank | Robert C. Colvin | Loan Number 57 450 |
|---|---|---|
| 303 Section Line Road | | Date November 23, 1999 |
| P.O. Box 697 | Larimer St. Unit 1702 | Maturity Date December 1, 2003 |
| Manteno, IL 60950 | Denver Colorado 80202-1548 | Loan Amount $ 39,100.00 |
| LENDER'S NAME AND ADDRESS | BORROWER'S NAME AND ADDRESS | Renewal Of 50521850 |
| "You" means the Lender, its successors and assigns. | "I" includes each Borrower above, jointly and severally. | |

TERMS FOLLOWING A ☐ APPLY ONLY IF CHECKED

NOTE - For value received, I promise to pay to you, or your order, at your address above, the principal sum of: **Thirty-nine Thousand One Hundred and no/100**————————————————————————————— Dollars $ **39,100.00**

plus interest from **November 23, 1999** at the rate of **9.00** % per year until **December 1, 2003**.

☐ ADDITIONAL FINANCE CHARGE - I also agree to pay a nonrefundable service charge of $ _____, and it will be ☐ paid in cash. ☐ paid pro rata over the loan term.
☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)

☐ VARIABLE RATE - The rate above may then change so as always to be _____ the following index rate: _____.

_____. The interest rate may not change more than _____ % each _____.
The annual interest rate in effect on this note will not at any time be more than _____ % or less than _____ %. The interest rate in effect on this note may change (as often as _____) (assuming there is a change in the base rate) and an increase in the interest rate will cause an increase in ☐ the amount of each scheduled payment. ☐ the amount due at maturity. ☐ the number of payments.

PAYMENT - I will pay this note as follows:
(a) ☐ Interest due: _____
     Principal due: _____
(b) ☒ This note has **48** payments. The first payment will be in the amount of $ **600.00** and will be due **January 1, 2000**.
     A payment of $ **600.00** will be due on the **1st** day of each **month** thereafter. The final payment of the entire unpaid balance of principal and interest will be due **December 1, 2003**.

INTEREST - Interest accrues on a **365 day** basis. POST-MATURITY INTEREST - Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☐ MINIMUM INTEREST CHARGE - I agree to pay a minimum interest charge of $ _____ if I pay this loan off before you have earned that much in interest. ☒ Interest will accrue at the rate of **14.00** % per year on the balance of this note not paid at maturity, including maturity by acceleration.
☒ LATE CHARGE - I agree to pay a late charge on any payment made more than **Ten** days after it is due equal to **5.00** % of the payment, or $ **10.00** whichever is greater. THE PURPOSE OF THIS LOAN IS - **purchase vehicle**

SECURITY - You have certain rights that may affect my property as explained on page 2. This loan ☒ is ☐ is not further secured.
(a) ☐ This loan is secured by _____, dated _____.
(b) ☒ Security Agreement - I give you a security interest in the Property described below. The rights I am giving you in this Property and the obligations this agreement secures are defined on page 2 of this agreement.

one 2000 Land Rover, Discovery SE, VIN SALTY1249YA235216

This Property will be used for **personal** purposes.

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS The amount I will have paid when I have made all scheduled payments. | I have the right to receive at this time an itemization of the Amount Financed. |
|---|---|---|---|---|
| 9.00 % | $11,276.34 | $39,100.00 | $50,376.34 | X YES - I want an itemization. |

My Payment Schedule will be:
|Number of Payments|Amount of Payments|When Payments Are Due||
|---|---|---|---|
|47|$ 600.00|monthly, beginning on January 1, 2000 and continuing on the same day of each and every month thereafter until|NO - I do not want an itemization.|
| |$| |"e" means an estimate.|
| |$| |$ _____ Filing Fees|
|1|$ 22,176.34|final balloon payment due at maturity December 1, 2003|$ _____ Nonfiling Insurance|

☐ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.
☐ Variable Rate (Check one) { ☐ My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
☐ The annual percentage rate may increase during the term of this transaction if _____.

Any increase will take the form of _____.
If the rate increases by _____ % in _____, the _____
will increase to _____. The rate may not increase more often than once _____, and may not increase more than _____ % each. The rate will not go above _____ %.

Security - I am giving a security interest in:
☒ the goods or property being purchased.
☐ (brief description of other property)
☒ collateral securing other loans with you may also secure this loan.
☒ my deposit accounts and other rights to the payment of money from you.
☒ Late Charge - I will be charged a late charge on any payment made more than **ten** days after it is due equal to **5.00** % of the payment, or $ **10.00** whichever is greater.

☐ Required Deposit - The annual percentage rate does not take into account my required deposit.
Prepayment - If I pay off this note early, I ☐ may ☒ will not have to pay a penalty.
                                            ☐ may n/a ☐ will not be entitled to a refund of part of the finance charge.
☒ Assumption - Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

CREDIT INSURANCE - Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless I sign and agree to pay the additional premiums.

|Type|Premium|Term|
|---|---|---|
|Credit Life|n/a| |
|Credit Disability|n/a| |
|Joint Credit Life|n/a| |

I ☐ do ☒ do not want credit life insurance.
I ☐ do ☒ do not want credit disability insurance.
I ☐ do ☒ do not want joint credit life insurance.
I ☐ do not want _____ Insurance.
X _____ DOB
X _____ DOB

PROPERTY INSURANCE - I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ _____ for _____ of coverage.

SINGLE INTEREST INSURANCE - I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ _____ for _____ of coverage.

(Optional)
Signed _____
Title _____ For Lender

ITEMIZATION OF AMOUNT FINANCED
AMOUNT GIVEN TO ME DIRECTLY            $ _____
AMOUNT PAID ON MY (LOAN) ACCOUNT       $ 10,678.25
   50521850                             $ _____
AMOUNTS PAID TO OTHERS ON MY BEHALF:
                    Insurance Premiums
                     to Public Officials
Deposit to DDA 462098                   $ 28,421.75
                                        $ _____
                                        $ _____
(less) PREPAID FINANCE CHARGE(S)        $ _____
                      Amount Financed   $ 39,100.00

(You are retaining a portion of the items marked with an asterisk above) (Add all items financed and subtract prepaid finance charges.)

SIGNATURES - I AGREE TO THE TERMS SET OUT ON PAGE 1 AND PAGE 2 OF THIS AGREEMENT. I HAVE RECEIVED A COPY OF THIS DOCUMENT ON TODAY'S DATE. COSIGNERS - SEE NOTICE ON PAGE 2 BEFORE SIGNING.

Signature _____ Robert C. Colvin
Signature _____

VARIABLE/SIMPLE INTEREST NOTE, DISCLOSURE, AND SECURITY AGREEMENT
© 1981, 1988 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form ND&S-VSI-IL 10/30/96 CUSTOMIZED

CONSUMER LOAN - NOT FOR OPEN-END CREDIT
(page 1 of 2)


EXHIBIT B

**ADDITIONAL TERMS OF THE NOTE**

**DEFINITIONS** - "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - This note and any agreement securing this note will be governed by the laws of the state of Illinois. The federal Truth-in-Lending disclosures on page 1 are disclosures only and are not intended to be terms of this agreement. The fact that any part of this note cannot be enforced will not affect the rest of the note. Any change to this note or any agreement securing this note must be in writing and signed by you and me.

**PAYMENTS** - Each payment I make on this loan will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on the interest rates (if variable) and my payment record. If any payment due under this loan does not equal or exceed the amount of interest due, you may, at your option, increase the amount of the payment due and all future payments to an amount that will pay off this loan in equal payments over the remaining term of this loan.

I understand and agree that some payments to third parties as a part of this contract may involve money retained by you or paid back to you as commissions or other remuneration.

**PREPAYMENT** - I may prepay this loan in whole or in part at any time. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full.

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If "Variable Rate" is checked on page 1, I will pay interest at the rates in effect from time to time. Decreases in the interest rate for this note will have the opposite effect on payments that increases would have. You will figure a change in the interest rate by using the index rate in effect at the time the interest rate is to change. Changes in the index between scheduled changes in the interest rate will not affect the interest rate. If the index specified on page 1 ceases to exist, I agree that you may substitute a similar index for the original.

**INDEX** - If you and I have agreed that the interest rate on this note will be variable and will be related to an index, then the index you select will function only as a tool for setting the rate on this note. You do not guaranty, by selecting any index, that the interest rate on this note will have a particular relationship to the interest rate you charge on any other loans or any type or class of loans with your other customers.

**ACCRUAL METHOD** - The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1. For this interest calculation, the accrual method will determine the number of days in a year. If no accrual method is stated, then you may use any accrual method for calculating interest allowed by law.

**POST-MATURITY INTEREST** - Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified on page 1. For purposes of this section, final maturity occurs:

(a) If this loan is payable on demand, on the date you make demand for payment;
(b) If this loan is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier;
(c) On the date of the last scheduled payment of principal; or
(d) On the date you accelerate the due date of this loan (demand immediate payment).

**REAL ESTATE OR RESIDENCE SECURITY** - If this loan is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this agreement.

**DEFAULT** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, I will be in default on this loan and any agreement securing this loan if any one or more of the following occurs:

(a) I fail to make a payment in full when due;
(b) I am, or are declared incompetent, or become insolvent;
(c) I fail to keep any promise I have made in connection with this loan;
(d) I fail to pay, or keep any other promise on, any other loan or agreement I have with you;
(e) I make any written statement or provide any financial information that is untrue or inaccurate at the time it is provided;
(f) Any creditor of mine attempts to collect any debt I owe through court proceedings, set-off or self-help repossession;
(g) The Property is damaged, destroyed or stolen;
(h) I fail to provide any additional security that you may require;
(i) Any legal entity (such as a partnership or corporation) that has agreed to pay this note merges, dissolves, reorganizes, ends its business or existence, or a partner or majority stockholder dies or is declared incompetent; or
(j) Anything else happens that causes you to believe that you will have difficulty collecting the amount I owe you.

If any of us are in default on this note or any security agreement, you may exercise your remedies against any or all of us.

**REMEDIES** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, if I am in default on this loan or any agreement securing this loan, you may:

(a) Make unpaid principal, earned interest and all other agreed charges I owe you under this loan immediately due;
(b) Use the right of set-off as explained below;
(c) Demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy;
(d) Make a claim for any and all insurance benefits or refunds that may be available on my default;
(e) Use any remedy you have under state or federal law; and
(f) Use any remedy given to you in any agreement securing this loan.

By choosing any one or more of these remedies you do not give up your right to use another remedy later. By deciding not to use any remedy should I be in default, you do not give up your right to consider the event a default if it happens again.

**COSTS OF COLLECTION AND ATTORNEYS' FEES** - I agree to pay you all reasonable costs you incur to collect this debt or realize on any security. This includes, unless prohibited by law, reasonable attorneys' fees. This provision also applies if I file a petition or any other claim for relief under any bankruptcy rule or law of the United States, or if such petition or other claim for relief is filed against me by another.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:

(a) Any deposit account balance I have with you;
(b) Any money owed to me on an item presented to you or in your possession for collection or exchange; and
(c) Any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off the debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**OTHER SECURITY** - Any present or future agreement securing any other debt I owe you also will secure the payment of this loan. Property securing another debt will not secure this loan if such property is my principal dwelling and you fail to provide any required notice of right of rescission. Also, property securing another debt will not secure this loan to the extent such property is in household goods.

**OBLIGATIONS INDEPENDENT** - I understand that my obligation to pay this loan is independent of the obligation of any other person who has also agreed to pay it. You may, without notice, release me or any of us, give up any right you may have against any of us, extend new credit to any of us, or renew or change this note one or more times and for any term, and I will still be obligated to pay this loan. You may, without notice, fail to perfect your security interest, impair, or release any security and I will still be obligated to pay this loan.

**WAIVER** - I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

**PRIVACY** - I agree that from time to time you may receive credit information about me from others, including other lenders and credit reporting agencies. I agree that you may furnish on a regular basis credit and experience information regarding my loan to others seeking such information. To the extent permitted by law, I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**FINANCIAL STATEMENTS** - I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**PURCHASE MONEY LOAN** - If this is a purchase money loan, you may include the name of the seller on the check or draft for this loan.

**ADDITIONAL TERMS OF THE SECURITY AGREEMENT**

**SECURED OBLIGATIONS** - This security agreement secures this loan (including all extensions, renewals, refinancings and modifications) and any other debt I have with you now or later. Property described in this security agreement will not secure other such debts if you fail to give any required notice of the right of rescission with respect to the Property. Also, this security agreement will not secure other debts if this security interest is in household goods and the other debt is a consumer loan. This security agreement will last until it is discharged in writing.

For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement:

(a) Payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the purchase money loan; and
(b) Payments on the purchase money loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items were acquired.

No security interest will be terminated by application of this formula. "Purchase money loan" means any loan the proceeds of which, in whole or in part, are used to acquire any property securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**PROPERTY** - The word "Property," as used here, includes all property that is listed in the security agreement on page 1. If a general description is used, the word Property includes all my property fitting the general description. Property also means all benefits that arise from the described Property (including all proceeds, insurance benefits, payments from others, interest, dividends, stock splits and voting rights). It also means property that now or later is attached to, is a part of, or results from the Property.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - Unless a co-owner(s) of the Property signed a third party agreement, I represent that I own all the Property. I will defend the Property against any other claim. I agree to do whatever you require to perfect your interest and keep your priority. I will not do anything to harm your position.

I will keep the Property in my possession (except if pledged and delivered to you), will keep it in good repair and use it only for its intended purposes. I will keep it at my address unless we agree otherwise in writing.

I will not try to sell or transfer the Property, or permit the Property to become attached to any real estate, without your written consent. I will pay all taxes and charges on the Property as they become due. I will inform you of any loss or damage to the Property. You have the right of reasonable access in order to inspect the Property.

**INSURANCE** - I agree to buy insurance on the Property against the risks and for the amounts you require. I will name you as loss payee on any such policy. You may require added security on this loan if you agree that insurance proceeds will be used to repair or replace the Property. I agree that if the insurance proceeds do not cover the amount I still owe you, I will pay the difference. I will buy the insurance from a firm authorized to do business in Illinois. The firm will be reasonably acceptable to you. I will keep the insurance until all debts secured by this agreement are paid.

**COLLATERAL PROTECTION INSURANCE NOTICE:** Unless I provide you with evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral. This insurance may, but need not, protect my interests. The coverage that you purchase may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by you, but only after providing you with evidence that I have obtained insurance as required by our agreement. If you purchase insurance for the collateral, I will be responsible for the premiums for that insurance, including interest and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The premiums may be added to my total outstanding balance or obligation. The premiums may be more than the premiums for insurance I may be able to obtain on my own.

**DEFAULT AND REMEDIES** - If I am in default, in addition to the remedies listed in the note portion of this document and subject to any of the limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, you may (after giving notice and waiting period of time, if required by law):

(a) Pay taxes or other charges, or purchase any required insurance, if I fail to do these things (but you are not required to do so). You may add the amount you pay to this loan and accrue interest on that amount at the interest rate(s) in effect from time to time, on this note until paid in full;
(b) Require me to gather the Property and any related records and make it available to you in a reasonable fashion;
(c) Take immediate possession of the Property, but in doing so you may not breach the peace or unlawfully enter onto my premises. You may sell, lease or dispose of the Property as provided by law. (If the Property includes a manufactured home, you will begin the repossession by giving me notice and an opportunity to cure my default, required by law.) You may apply what you receive from the sale of the Property to your expenses and then to the debt. If what you receive from the sale of the Property is less than what I owe you, you may take me to court to recover the difference (to the extent permitted by law); and
(d) Keep the Property to satisfy the debt.

I agree that when you must give notice to me of your intended sale or disposition of the Property, the notice is reasonable if it is sent to me at my last known address by first class mail 10 days before the intended sale or disposition. I agree to inform you in writing of any change in my address.

**FILING** - A copy of this security agreement may be used as a financing statement where allowed by law.

---

**THIRD PARTY AGREEMENT**

For the purposes of the provisions within this enclosure, "I," "me" or "my" means the person signing below and "you" means the Lender identified on page 1.

I agree to give you a security interest in the Property that is described on page 1. I agree to the terms of this note and security agreement but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any borrower, renew or change this note or security agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any borrower.

I HAVE RECEIVED A COMPLETED COPY OF THIS NOTE AND SECURITY AGREEMENT.

NAME _____
X

---

**NOTICE TO COSIGNER**

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable

(page 2 of 2)

BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341)  FORM NDsS-VSI-IL  11/9/96

| HomeStar Bank | Robert C. Colvin | |
|---|---|---|
| 303 Section Line Road | 1777 Larimer Street – Unit 1702 | Loan Number 56__?850 |
| P.O. Box 697 | ver, CO  80202-1548 | Date June 8, 1999 |
| Manteno, IL 60950 | | Maturity Date June 8, 2003 |
| LENDER'S NAME AND ADDRESS | BORROWER'S NAME AND ADDRESS | Loan Amount $ 54,052.94 |
| "You" means the Lender, its successors and assigns. | "I" includes each Borrower above, jointly and severally. | Renewal Of |

TERMS FOLLOWING A ☐ APPLY ONLY IF CHECKED

NOTE - For value received, I promise to pay to you, or your order, at your address above, the principal sum of: **Fifty-Four Thousand Fifty-Two and 94/100**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* Dollars *\*$54,052.94\*\*

plus interest from **June 8, 1999** at the rate of **8.50** % per year until **June 8, 2003**

☐ ADDITIONAL FINANCE CHARGE - I also agree to pay a nonrefundable service charge of $ _____ and it will be ☐ paid in cash. ☐ paid pro rata over the loan term.
☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)
☐ VARIABLE RATE - The rate above may then change so as always to be _____ the following index rate:

_____. The interest rate may not change more than _____ % each
The annual interest rate in effect on this note will not at any time be more than _____ % or less than _____ %. The interest rate in effect on this
note may change (as often as) _____ (assuming there is a change in the base rate) and an increase in
the interest rate will cause an increase in ☐ the amount of each scheduled payment. ☐ the amount due at maturity. ☐ the number of payments.

PAYMENT - I will pay this note as follows:
(a) ☐ Interest due: _____
  Principal due: _____
(b) ☒ This note has **47** payments. The first payment will be in the amount of $ **600.00** and will be due **July 8, 1999**
  _____. A payment of $ **600.00** will be due on the **8th** day of each **month**
  thereafter. The final payment of the entire unpaid balance of principal and interest will be due **June 8, 2003**

INTEREST - Interest accrues on a **365/365** basis.
☐ MINIMUM INTEREST CHARGE - I agree to pay a minimum interest charge of
$ _____ if I pay this loan off before you have earned that much in interest.
☒ LATE CHARGE - I agree to pay a late charge on any payment made more than
**10** days after it is due equal to **5** % of the payment, or $ **10.00**
whichever is greater.

POST-MATURITY INTEREST - Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☒ Interest will accrue at the rate of **13.50** % per year on the balance of this note not paid at maturity, including maturity by acceleration.

THE PURPOSE OF THIS LOAN IS - **Purchase Vehicle**

SECURITY - You have certain rights that may affect my property as explained on page 2. This loan ☒ is ☐ is not further secured.
(a) ☐ This loan is secured by _____
(b) ☒ Security Agreement - I give you a security interest in the Property described below. The rights I am giving you in this Property and the obligations this agreement secures are defined on page 2 of this agreement.

  **2000 Jaguar 6100 / VIN #SAJDA01C3YFL01895**

This Property will be used for **Personal** purposes.

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS The amount I will have paid when I have made all scheduled payments. | I have the right to receive at this time an itemization of the Amount Financed. |
|---|---|---|---|---|
| 8.50 % | $ 16,456.80 | $ 54,052.94 | $ 70,509.74 | XX YES - I want an itemization. |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 47 | $ 600.00 | Monthly, beginning July 8, 1999 and on the same date thereafter |
| 1 | $ 42,309.74 | At maturity on June 8, 2003 |
| | $ | |

NO - I do not want an itemization.
"e" means an estimate.
$ _____ Filing Fees
$ _____ Nonfiling Insurance

☐ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.
Variable Rate (Check one) { ☐ My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
☐ The annual percentage rate may increase during the term of this transaction if _____

Any increase will take the form of _____
If the rate increases by _____ % in _____, the
will increase to _____. The rate may not increase more often than once _____, and may not increase more
than _____ % each _____. The rate will not go above _____ %.

Security - I am giving a security interest in: ☐ (brief description of other property)
☒ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ my deposit accounts and other rights to the payment of money from you.
☒ Late Charge - I will be charged a late charge on any payment made more than **10** days after it is due equal to **5** % of the payment, or $ **10.00** whichever is greater.
☐ Required Deposit - The annual percentage rate does not take into account my required deposit.
Prepayment - If I pay this note off early, I ☐ may ☒ will not have to pay a penalty.
 ☐ may NA ☐ will not be entitled to a refund of part of the finance charge.
☒ Assumption - Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

CREDIT INSURANCE - Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless I sign and agree to pay the additional premiums.

| Type | Premium | Term |
|---|---|---|
| Credit Life | | |
| Credit Disability | | |
| Joint Credit Life | | |

I ☐ do ☒ do not want credit life insurance.
I ☐ do ☒ do not want credit disability insurance.
I ☐ do ☒ do not want joint credit life insurance.
I ☐ do ☒ do not want _____ Insurance.
X _/s/ Robert Colvin_ DOB
X _____ DOB

PROPERTY INSURANCE - I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ _____ for _____ of coverage.

SINGLE INTEREST INSURANCE - I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ _____ for _____ of coverage.

(Optional)
Signed _____
Title _____ For Lender

ITEMIZATION OF AMOUNT FINANCED
AMOUNT GIVEN TO ME DIRECTLY $ **35,910.53**
AMOUNT PAID ON MY (LOAN) ACCOUNT
HSB #53435850 $ **18,122.41**
AMOUNTS PAID TO OTHERS ON MY BEHALF:
  Insurance Premiums $ _____
  to Public Officials $ **20.00**
  _____ $ _____
  _____ $ _____
  _____ $ _____
(less) PREPAID FINANCE CHARGE(S) $ _____
Amount Financed $ **54,052.94**

(You are retaining a portion of the items marked above with an asterisk)
(Add all items financed and subtract prepaid finance charges.)

SIGNATURES - I AGREE TO THE TERMS SET OUT ON PAGE 1 AND PAGE 2 OF THIS AGREEMENT. I HAVE RECEIVED A COPY OF THIS DOCUMENT ON TODAY'S DATE. COSIGNERS SEE NOTICE ON PAGE 2 BEFORE SIGNING.

Signature _/s/ Robert C. Colvin_
ROBERT C. COLVIN

Signature _____

VARIABLE/SIMPLE INTEREST NOTE, DISCLOSURE, AND SECURITY AGREEMENT
© 1981, 1988 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form NDaS-VSI-IL 10/30/98 CUSTOMIZED

CONSUMER LOAN - NOT FOR OPEN-END CREDIT
(page 1 of 2)


EXHIBIT C

## ADDITIONAL TERMS OF THE NOTE

**DEFINITIONS** - "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - This note and any agreement securing this note will be governed by the laws of the state of Illinois. The federal Truth-in-Lending disclosures on page 1 are disclosures only and are not intended to be terms of this agreement. The fact that any part of this note cannot be enforced will not affect the rest of this note. Any change to this note or any agreement securing this note must be in writing and signed by you and me.

**PAYMENTS** - Each payment I make on this loan will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on the interest rates (if variable) and my payment record. If any payment due under this loan does not equal or exceed the amount of interest due, you may, at your option, increase the amount of the payment due and all future payments to an amount that will pay off this loan in equal payments over the remaining term of this loan.

I understand and agree that some payments to third parties as a part of this contract may involve money retained by you or paid back to you as commissions or other remuneration.

**PREPAYMENT** - I may prepay this loan in whole or in part at any time. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full.

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If "Variable Rate" is checked on page 1, and I pay interest at the rates (in effect from time to time. Decreases in the interest rate for this note will have the opposite effect on payments that increases would have. You will figure a change in the interest rate by using the index rate in effect at the time the interest rate is to change. Changes in the index between scheduled changes in the interest rate will not affect the interest rate. If the index specified on page 1 ceases to exist, I agree that you may substitute a similar index for the original.

**INDEX** - If you and I have agreed that the interest rate on this note will be variable and will be related to an index, then the index you select will function only as a tool for setting the rate on this note. You do not guaranty, by selecting any index, that the interest rate on this note will have a particular relationship to the interest rate you charge on any other loans or any type or class of loans with your other customers.

**ACCRUAL METHOD** - The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1. For interest calculation, the accrual method will determine the number of days in a year. If no accrual method is stated, then you may use any accrual method for calculating interest allowed by law.

**POST-MATURITY INTEREST** - Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified on page 1. For purposes of this section, final maturity occurs:

(a) If this loan is payable on demand, on the date you make demand for payment;
(b) If this loan is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier;
(c) On the date of the last scheduled payment of principal; or
(d) On the date you accelerate the due date of this loan (demand immediate payment).

**REAL ESTATE OR RESIDENCE SECURITY** - If this loan is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this agreement.

**DEFAULT** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, I will be in default on this loan and any agreement securing this loan if any one or more of the following occurs:

(a) I fail to make a payment in full when due;
(b) I die, am declared incompetent, or become insolvent;
(c) I fail to keep any promise I have made in connection with this loan;
(d) I fail to pay, or keep any other promise on, any other loan or agreement I have with you;
(e) I make any written statement or provide any financial information that is untrue or inaccurate at the time it is provided;
(f) Any creditor of mine attempts to collect any debt I owe through court proceedings, set-off or self-help repossession;
(g) The Property is damaged, destroyed or stolen;
(h) I fail to provide any additional security that you may require;
(i) Any legal entity (such as a partnership or corporation) that has agreed to pay this note merges, dissolves, reorganizes, ends its business or existence, or a partner or majority stockholder dies or is declared incompetent; or
(j) Anything else happens that causes you to believe that you will have difficulty collecting the amount I owe you.

If any of us are in default on this note or any security agreement, you may exercise your remedies against any or all of us.

**REMEDIES** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, if I am in default on this loan or any agreement securing this loan, you may:

(a) Make unpaid principal, earned interest and all other agreed charges I owe you under this loan immediately due;
(b) Use the right of set-off as explained below;
(c) Demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy;
(d) Make a claim for any and all insurance benefits or refunds that may be available on my default;
(e) Use any remedy you have under state or federal law; or
(f) Use any remedy given to you in any agreement securing this loan.

By choosing any one or more of these remedies you do not give up your right to use another remedy later. By deciding not to use any remedy should I be in default, you do not give up your right to consider the event a default if it happens again.

**COSTS OF COLLECTION AND ATTORNEYS' FEES** - I agree to pay you all reasonable costs you incur to collect this debt or realize on any security. This includes, unless prohibited by law, reasonable attorneys' fees. This provision also shall apply if I file a petition or any other claim for relief under any bankruptcy rule or law of the United States, or if such petition or other claim for relief is filed against me by another.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(a) Any deposit account balance I have with you;
(b) Any money owed to me on an item presented to you or in your possession for collection or exchange; and
(c) Any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. The total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**OTHER SECURITY** - Any present or future agreement securing any other debt I owe you also will secure the payment of this loan. Property securing another debt will not secure this loan if such property is my principal dwelling and you fail to provide any required notice of right of rescission. Also, property securing another debt will not secure this loan to the extent such property is in household goods.

**OBLIGATIONS INDEPENDENT** - I understand that my obligation to pay this loan is independent of the obligation of any other person who has also agreed to pay it. You may, without notice, release me or any of us, give up any right you may have against any of us, extend new credit to any of us, or renew or change this note one or more times and for any term, and I will still be obligated to pay this loan. You may, without notice, fail to perfect your security interest in, impair, or release any security and I will still be obligated to pay this loan.

**WAIVER** - I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

**PRIVACY** - I agree that from time to time you may receive credit information about me from others, including other lenders and credit reporting agencies. I agree that you may furnish on a regular basis credit and experience information regarding my loan to others seeking such information. To the extent permitted by law, I agree that you will not be liable for any claim arising from the use of information provided by you or others or for providing such information to others.

**FINANCIAL STATEMENTS** - I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**PURCHASE MONEY LOAN** - If this is a purchase money loan, you may include the name of the seller on the check or draft for this loan.

## ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**SECURED OBLIGATIONS** - This security agreement secures this loan (including all extensions, renewals, refinancings and modifications) and any other debt I have with you now or later. Property described in this security agreement will not secure other such debts if you fail to give any required notice of the right of rescission with respect to the Property. Also, this security agreement will not secure other debts if this security interest is in household goods and the other debt is a consumer loan. This security agreement will last until it is discharged in writing.

For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement:

(a) Payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the purchase money loan; and
(b) Payments on the purchase money loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items were acquired.

No security interest will be terminated by application of this formula. "Purchase money loan" means any loan the proceeds of which, in whole or in part, are used to acquire any property securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**PROPERTY** - The word "Property," as used here, includes all property that is listed in the security agreement on page 1. If a general description is used, the word Property includes all my property fitting the general description. Property also means all benefits that arise from the described Property (including all proceeds, insurance benefits payments from others, interest, dividends, stock splits and voting rights). It also means property that now or later is attached to, is a part of, or results from the Property.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - Unless a co-owner(s) of the Property signed a third party agreement, I represent that I own all the Property. I will defend the Property against any other claim. I agree to do whatever you require to perfect your interest and keep your priority. I will not do anything to harm your position.

I will keep the Property in my possession (except if pledged and delivered to you), will keep it in good repair and use it only for its intended purposes. I will keep it at my address unless you agree otherwise in writing.

I will not try to sell or transfer the Property, or permit the Property to become attached to any real estate, without your written consent. I will pay all taxes and charges on the Property as they become due. I will inform you of any loss or damage to the Property. You have the right of reasonable access in order to inspect the Property.

**INSURANCE** - I agree to buy insurance on the Property against the risks and for the amounts you require. I will name you as loss payee on any such policy. You may require added security on this loan if you agree that insurance proceeds may be used to repair or replace the Property. I agree that if the insurance proceeds do not cover the amount I still owe you, I will pay the difference. I will buy the insurance from a firm authorized to do business in Illinois. The firm will be reasonably acceptable to you. I will keep the insurance until all debts secured by this agreement are paid.

**COLLATERAL PROTECTION INSURANCE NOTICE:** Unless I provide you with evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral. This insurance may, but need not, protect my interests. The coverage that you purchase may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by you, but only after providing you with evidence that I have obtained insurance as required by our agreement. If you purchase insurance for the collateral, I will be responsible for the premiums for that insurance, including interest and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The premiums may be added to my total outstanding balance or obligation. The premiums may be more than the premiums for insurance I may be able to obtain on my own.

**DEFAULT AND REMEDIES** - If I am in default, in addition to the remedies listed in the note portion of this document and subject to any of the limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph, you may (after giving notice and waiting period of time, if required by law):

(a) Pay taxes or other charges, or purchase any required insurance, if I fail to do these things (but you are not required to do so). You may add the amount you pay to this loan and accrue interest on that amount at the interest rate(s) in effect from time to time, on this note until paid in full;
(b) Require me to gather the Property and any related records and make it available to you in a reasonable fashion;
(c) Take immediate possession of the Property, but in doing so you may not breach the peace or unlawfully enter onto my premises. You may sell, lease or dispose of the Property as provided by law. (If the Property includes a manufactured home, you will begin the repossession by giving me notice and an opportunity to cure my default, if required by law.) You may apply what you receive from the sale of the Property to your expenses and then to the debt. If what you receive from the sale of the Property is less than what I owe you, you may take me to court to recover the difference (to the extent permitted by law); and
(d) Keep the Property to satisfy the debt.

I agree that when you must give notice to me of your intended sale or disposition of the Property, the notice is reasonable if it is sent to me at my last known address by first class mail 10 days before the intended sale or disposition. I agree to inform you in writing of any change in my address.

**FILING** - A copy of this security agreement may be used as a financing statement where allowed by law.

---

**THIRD PARTY AGREEMENT**

For the purposes of the provisions within this enclosure, "I," "me" or "my" means the person signing below and "you" means the Lender identified on page 1.

I agree to give you a security interest in the Property that is described on page 1. I agree to the terms of this note and security agreement but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults my interest in the secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any borrower, renew or change this note or security agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any borrower.

I HAVE RECEIVED A COMPLETED COPY OF THIS NOTE AND SECURITY AGREEMENT.

NAME _____

X

---

**NOTICE TO COSIGNER**

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

---

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable

| ROBERT C COLVIN<br>2710 ROCKBRIDGE WAY<br>HIGHLANDS RANCH, CO 80129 | HOMESTAR BANK<br>3 DIVERSATECH DR<br>MANTENO, IL 60950 | This agreement relates to LOAN NUMBER __57973450__<br>ORIGINALLY DATED __NOVEMBER 23, 1999__ |
|---|---|---|
| "I" means the **BORROWER(S)** named above. | "You" means the **LENDER** named above. | THIS AGREEMENT DATED __JANUARY 20, 2004__ |

**Definitions:** As used in this agreement, the term "I" means the Borrower(s) named above; "You" means the Lender named above; "Original Obligation" means my previous agreement to pay you money (referred to above by Loan Number and original date), and any related agreements such as a security agreement.

**Extension Agreement:** You and I have entered into an original obligation which is a __N AUTO LOAN (INSTALLMENT)__.
By entering into this agreement, we are extending the due date(s) of __ALL__ payments of the original obligation.

The original due date(s) and the amount(s) of the payment(s) extended by this agreement, are as follows:

(a) $ __23,108.48 PLUS ACCRUED INTEREST__ originally due __DECEMBER 1, 2003__
(b) $ _____ originally due _____
(c) $ _____ originally due _____
(d) $ _____ originally due _____

The extended due date(s) and the amount(s) then due (including any fees or interest due on the new maturity dates) are as follows:

(a) __FEBRUARY 20, 2004 AND MONTHLY THEREAFTER FOR__   $ __555.13__
(b) __48 MONTHS THROUGH MATURITY ON__   $ _____
(c) __JANUARY 20, 2008__   $ _____
(d) _____   $ _____

**Cost:** For this extension, I agree to pay you the fees and/or additional interest as indicated below:

[X] A total fee of $ __25.00__
Upon prepayment of the entire outstanding balance of this obligation:
[ ] a portion of this fee may be refunded, as provided by law.
[ ] this fee will not be refunded.

[X] Simple Interest, on the unpaid balances of principal remaining from time to time at the rate of __7.00__ % per year from __JANUARY 20, 2004__ until __MATURITY__. This interest rate is __LESS THAN__ the rate previously in effect on this obligation.

**ADDITIONAL TERMS**
__EXTENDING ORIGINAL TERM 48 MONTHS WITH $74.06 INTEREST DUE AT CLOSING.__

This agreement does not in any way, satisfy or cancel the original obligation. Except as specifically amended by this agreement, all other terms of the original obligation remain in effect. This means and includes, but is not limited to:
(1) Property which secures the original obligation will continue to secure my total responsibility to pay you as amended by this agreement. (2) All parties who have a responsibility to pay you in any way the original obligation (including any co-makers, endorsers and guarantors) remain responsible for the total amount I owe you as amended by this agreement. If you require the consent to this extension by any additional party, I agree to obtain such consent, and this extension agreement will not be effective if the consent is not obtained. (3) Any post-maturity interest rate provided for in the original obligation (except as specifically contracted for here) shall now begin to apply after the last scheduled payment of the original obligation as amended by this agreement. (4) You will not be responsible to further extend the payments affected by this agreement or any other scheduled payments. All other scheduled payments not affected by this agreement shall remain due as previously scheduled. (5) All provisions for default, remedies, attorneys' fees (if any) etc. remain in effect. (6) My responsibility (if any) to provide insurance on the property which secures the original obligation (if any) shall remain in effect. However, the term of such insurance policy will not be extended to cover any additional term resulting from this agreement unless contracted for and any additional premium is paid. (7) The term of any Credit Life and/or Disability Insurance coverages purchased in connection with the original obligation will not be extended for the additional term provided for in this agreement unless contracted for and any additional premium is paid.

SIGNATURE OF AUTHORIZED REPRESENTATIVE OF LENDER

x _/s/ M. M. Olszewski_
__MATTHEW M OLSZEWSKI, SR. VP/CHIEF CREDIT OFFICER__

SIGNATURE(S) FOR BORROWERS. BY SIGNING BELOW, I AGREE TO THE EXTENSION. I HAVE RECEIVED A COPY OF THIS AGREEMENT ON TODAY'S DATE.

x _/s/ Robert C. Colvin_
__ROBERT C COLVIN__

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 FORM-LEA 8/7/97